UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Jonathan H. Dodge

    v.                                                   Civil No. 09-cv-421-PB

Martin F. Swirko, et al.[1]

**REPORT AND RECOMMENDATION**

Before the Court is Jonathan Dodge's complaint, alleging that his rights have been violated by the defendants, the prosecutor and police officers involved in his state court criminal case. As Dodge is proceeding pro se and in forma pauperis, the matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915(a)(1); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

Standard of Review

Under this Court's local rules, when a person commences an action pro se and in forma pauperis, the Magistrate Judge

---

[1] In addition to Swirko, Dodge names Manchester Police Officer Stephen Reardon and prosecutor Ross McLeod as defendants to this action.

conducts a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949

(2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted). Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

## Background

On March 29, 2008, Jonathan Dodge received a $749.78 check, apparently drawn on an account from a Citizens Bank in Ohio. The check appeared to be from Ellison Construction, Inc. Dodge states he believed the check was payment for cabinets he had made. Dodge cashed the check at Service Credit Union ("SCU") in Manchester, New Hampshire. On April 8, 2008, the check was returned to SCU from Citizens Bank as the check had an invalid account number on it. Stephanie Fraser at SCU tried unsuccessfully to contact Dodge to advise him the check had been

returned unpaid.  When Fraser couldn't reach Dodge, she contacted the Manchester Police Department ("MPD").

MPD Detective Martin Swirko investigated the matter as a criminal case.  In May 2008, Swirko discovered that Dodge had previously had a different legal name, "Brian Scott Smith," and that he had an extensive criminal record under his former name, although the record was more than fifteen years old.  Swirko constructed a criminal case against Dodge based on the erroneous assumption that Dodge's name was actually Brian Scott Smith, and that he was making forged checks out to his own alias, Jonathan Dodge.  Dodge asserts that Swirko based this theory only on the fact that Dodge had a prior criminal record and name change, and that no other facts indicated that the check was written by Dodge or that Dodge was aware that the check was not good at the time he cashed it.

Dodge claims that Swirko provided false information that Dodge was an alias obtained for illegal purposes in an arrest warrant affidavit filed in the Manchester District Court.  Dodge alleges that Swirko, acting in concert with prosecutor Ross McLeod, lied about the evidence in the case in order to have Dodge arrested and held on bail.  Dodge further claims that

Manchester District Court Judge Lyons accepted this information and set cash bail that Dodge was unable to raise.  Dodge further claims that Swirko testified falsely to the grand jury, which resulted in Dodge's eventual indictment.  It does not appear on the record presently before the Court that the matter has yet gone to trial.[2]

## Discussion[3]

I.  Section 1983

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983[4]; City of Okla. City v.

---

[2]Dodge's initial pleading (document no. 1) and request for a temporary restraining order (document no. 3) indicate that the state criminal trial was scheduled for December 14, 2009.  As Dodge has filed no addendum to his complaint regarding the current status of his criminal case, I will presume, for the purposes of preliminary review, that that status is as it was at the time this action was filed.

[3]The claims, as identified herein, will be considered to be the claims in this matter for all purposes.  If Dodge objects to the claims as identified, he must do so by properly objecting to this Report and Recommendation.

[4]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

5

Tuttle, 471 U.S. 808, 829 (1985); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).

   Dodge asserts that his Fourth and Fourteenth Amendment due process rights have been violated by MPD Officers Swirko and Stephen Reardon,[5] and Attorney McLeod, in collusion with one another.  Dodge alleges that these defendants used false information to obtain a warrant for his arrest, to indict him, and to have him held on excessive bail.

   Dodge also asserts that Det. Swirko arrested him without probable cause, as no facts in the case supported his guilt.  Instead, Dodge claims, Swirko presumed his guilt because Dodge had previously had a different legal name, under which he had a

---

> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law . . . .

   [5]Stephen Reardon is not mentioned in the narrative of Dodge's complaint.  Accordingly, even if I were not recommending dismissal of this action in its entirety, I would recommend dismissal of Reardon from this action.

long criminal record.  Dodge asserts that Swirko told Manchester District Court Judge Lyons, McLeod, and the grand jury that Dodge's real name was Brian Scott Smith and that Jonathan Dodge was a false alias, when Swirko knew that Dodge's legal name was Jonathan Dodge.  Dodge asserts that these lies resulted in an improper arrest and thereby violated his Fourth Amendment right to be free from unreasonable seizures of his person.

Dodge's claims of malicious prosecution and false arrest arise under the Fourth and Fourteenth Amendments of the United States Constitution and are asserted against individuals acting under color of state law.  Accordingly, these claims arise under § 1983.

II.   Fourteenth Amendment Claim - Malicious Prosecution

Dodge asserts that his Fourteenth Amendment due process rights were violated by the defendants when Swirko testified falsely regarding Dodge's real name to the grand jury, and when McLeod lied to the Court about Dodge's name in order to have Dodge detained prior to trial.  Dodge's claims can be construed to allege that the defendants violated his due process rights as the result of a malicious prosecution initiated and maintained by Swirko and McLeod.  In order to assert a cause of action for a

malicious prosecution claim under § 1983, a plaintiff must establish that the criminal charges at issue resulted in some deprivation of liberty consistent with the concept of seizure that violated the Fourth Amendment.  See Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001); Britton v. Maloney, 196 F.3d 24, 28-29 (1st Cir. 1999).  Here, Dodge asserts that his arrest and detention constitute an improper seizure of his person and deprivation of his liberty.

A plaintiff alleging malicious prosecution must also establish that (1) the criminal action in question was initiated and instigated by the defendant or defendants, (2) the prosecution culminated in favor of the plaintiff, (3) the defendant or defendants acted with malice and absent probable cause, and (4) the plaintiff suffered damages.  Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1st Cir. 1999).  "[A] § 1983 claim for deprivation of civil rights through malicious prosecution cannot be stated without an allegation that the prosecution terminated in a manner favorable to the accused."  Malachowski v. City of Keene, 787 F.2d 704, 713 (1st Cir. 1986).  This matter has not yet been tried, and Dodge has therefore been neither convicted nor acquitted of the criminal charge against him.

Accordingly, any claim of malicious prosecution is premature and should be dismissed without prejudice to refiling should the state criminal prosecution culminate in Dodge's favor.[6]

Further, the Younger v. Harris abstention doctrine provides that federal courts should abstain from enjoining pending state judicial proceedings when: (1) there is an ongoing state proceeding which is judicial in nature; (2) important state interests are involved; and (3) the plaintiff will have an adequate opportunity in the state proceeding to raise the constitutional challenges presented by the federal lawsuit. 401 U.S. 37, 43-44 (1971); see also Huffman v. Pursue, Ltd., 420 U.S. 592, 603-05 (1975) (Younger is grounded in principles of comity and federal courts, ordinarily, should not interfere with state courts). Absent extraordinary circumstances, abstention is mandatory, not discretionary, where the federal lawsuit would interfere in a matter that satisfies the three-part test for abstaining under Younger. See Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005).

"Except in the most extraordinary cases, a federal court

---

[6] I express no opinion at this time regarding any claim Dodge may assert against McLeod relating to his conduct during the bail hearing, in light of the doctrine of absolute immunity. See Imbler v. Pachtman, 424 U.S. 409, 431 (1976).

must presume that state courts, consistent with the imperatives of the Supremacy Clause, see U.S. Const., art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." Casa Marie, Inc. v. Super. Ct., 988 F.2d 252, 262 (1st Cir. 1993).  Federal court intervention can be countenanced only where a plaintiff can show there is no opportunity to raise the federal issues in a state court, a state statute under attack is "flagrantly and patently violative of express constitutional prohibitions in every clause," or plaintiffs can show "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 53-54.

To remedy the wrongs he alleges were committed against him, Dodge asks this Court to enjoin the use of certain testimony from Swirko in his state criminal trial, and further seeks an injunction barring defendants from further depriving him of his civil rights in the context of his state criminal case and related proceedings.  The trial in this matter had not yet occurred at the time the complaint in this matter was filed, and nothing has been filed here to indicate that the criminal case has been resolved.  This action appears, therefore, to be both

judicial in nature and ongoing.  Further, the resolution of criminal cases is unquestionably a matter of state importance, as is the integrity of evidence presented in the state courts.  Lastly, Dodge has provided no fact from which this Court can infer that he has been or will be denied the opportunity to litigate the issues presented here in the state courts, in particular as they pertain to the appropriate use or exclusion of certain evidence at trial.  Nothing in the facts presented indicate any extraordinary circumstances which would allow this Court to interfere in State court criminal proceedings.  All three Younger factors are therefore present in the instant case, and this Court's abstention in the matter is mandatory.  Dodge's Fourteenth Amendment claims of malicious prosecution concerning the use of particular evidence against him at trial should be dismissed.

III. Fourth Amendment Claim

The Fourth Amendment guarantees an individual the right to be secure in his person.  See U.S. Const. amend. IV ("The right of the people to be secure in their persons, . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . ."); Kalina v.

Fletcher, 522 U.S. 118, 129 (1997) ("The Fourth Amendment requires that arrest warrants be based 'upon probable cause, supported by Oath or affirmation.'"). A police officer applying for an arrest warrant is liable in a § 1983 action if, in the event probable cause to arrest is lacking, the officer causes a warrant to issue by knowingly obtaining the warrant with false information. See Malley v. Briggs, 475 U.S. 335, 345-46 (1986). "[A]rrests procured on the basis of material false statements or testimony given in reckless disregard for the truth violate the Fourth Amendment." See Martinez-Rodriguez v. Guevara, 597 F.3d 414, 420 (1st Cir. 2010) (citing Burke v. Town of Walpole, 405 F.3d 66, 81 (1st Cir. 2005) (stating that officers violate the Fourth Amendment if they 'act [] in reckless disregard, with a high degree of awareness of [the] probable falsity of statements made in support of an arrest warrant") and Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (holding that use of false statements to obtain a warrant violates Fourth Amendment if false statements were material to finding of probable cause)). The Fourth Amendment protection against the use of false statements extends to the grand jury context to the extent that a plaintiff alleges he was improperly arrested on an indictment obtained through the

provision of false or misleading statements to a grand jury.  See Martinez-Rodriguez, 597 F.3d at 420.

Dodge claims that his Fourth Amendment rights were violated by Swirko when the detective knowingly made and swore to a false statement regarding Dodge's true name to the Manchester District Court in obtaining an arrest warrant for Dodge.  Further, Dodge states that although Swirko had previously admitted to knowing that plaintiff's legal name was Jonathan Dodge, he testified, falsely, to the grand jury that plaintiff was Brian Scott Smith.[7] I find that Dodge has stated sufficient facts to assert Fourth Amendment claims against Swirko for his knowing false testimony.

Again, the relief Dodge seeks is an injunction barring certain testimony in the state criminal case.  As discussed above, however, the Younger abstention doctrine applies here, and I recommend that this Court abstain from this matter at this

---

[7]As noted in connection with Dodge's malicious prosecution claim, Dodge also accuses the prosecutor in his criminal case, Ross McLeod, of using false information regarding his name in a post-indictment bail argument.  Dodge admits, however, that he has no information indicating that McLeod knew the statement was false.  In any event, a prosecutor would be immune from prosecution for an argument he made during an in-court hearing, even if that argument was based on false information, as a bail argument is "intimately associated with the judicial phase of the criminal process," rather than the investigatory phase.  See Imbler, 424 U.S. at 431.

time.  I further recommend that the Fourth and Fourteenth Amendment claims raised in this matter be dismissed without prejudice to refiling should the criminal matter ultimately be resolved in Dodge's favor.

IV.  Criminal Conspiracy

Dodge alleges that the defendants are guilty of criminal conspiracies to deprive him of his constitutional rights under the color of state law, in violation of 18 U.S.C. §§ 242 & 242.  These statutes establish criminal liability for certain deprivations of civil rights, but do not give rise to a private civil cause of action.  Dodge, as a private citizen, has no right to prosecute federal criminal actions.  See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989).  Accordingly, no cause of action accrues to Dodge under 18 U.S.C. §§ 242 & 242, and I recommend dismissal of those claims from this action.

## Conclusion

For the foregoing reasons, I recommend dismissal of this action in its entirety, without prejudice to refiling should

Dodge's criminal case be resolved in his favor. Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauth. Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

*James R. Muirhead* (signature)
James R. Muirhead
United States Magistrate Judge

Date:    May 24, 2010

cc:      Jonathan H. Dodge, pro se

JM:jba